Zagg Intellectual Property v. Tech 21 UK Ltd. Zagg Intellectual Property v. Tech 21 UK Ltd. Good morning, Your Honours. Peter DeYoung on behalf of the panel. Just by way of procedural background, this appeal results from an IPR action from the Patent Trial and Appeal Board. The patent issue was the 516 patent. Just to refresh the Court's memory, that patent originally had 18 claims. During the IPR process, we cancelled all the claims, but claims 1, 3, and 4. Where in Mason 1 and Mason 2 is the peel-away cover? Mason 1, the peel-away cover is disclosed in the background section of Mason 1 and Mason 2. In other words, it's part of the specification. It's certainly part of the specification, but it's not part of the invention when you're describing other prior art. I mean, if the specification includes that as a description of what's happening in your claims, you're right. But where in the patents does it disclose the peel-away cover in your claims, not other patents? Well, you're right. In the detailed description parts of Mason 1 and 2, they don't talk about the peel-away cover. So you can't point me to anything in Mason 1 or 2 that says these claims include a peel-away cover. It's all the prior art includes a peel-away cover. That's the characterization of the art, but it's also related to the present invention. I don't think it's possible to separate just matter. Where in the specification or the claims does it say anything that the patents, those patents and inventions has a peel-away cover in Mason 1 or 2? It mentions it only in the background. Okay. And I would suggest, Your Honor, that it's not relevant where it appears in the specification. Most innovation is... If we think that that's not enough, and so that the priority date by the anything, assuming that Mason 1 and 2 are prior art, that combining them with, is it Thomas that shows a peel-away cover? I didn't see anything that suggested that that conclusion was wrong. On claims 1, 3, and 4, I think that's right. So it's all about priority date here. If we disagree with you on priority date, you don't have much else. I know there's the amendment issue. The amended claims, claims 19, 22, and 29, we think survive the combination of references the board put together. Those add the, what we call the... Those are the amended claims. Yeah, 19, 22, and 29 are the independent claims that we added, and then there's some dependent claims from those. I mean, given the way that PTOP looked at the amended claims and discussed that in terms of you failing to meet your burden of proof, and since we had that question before us at ACWA, I mean, shouldn't we just hold that? I mean, if we decide that the PTAB's rules on burdens of proof are wrong, then I assume you would think we just have to vacate and remand for them to apply the correct version. That's correct. But you didn't raise the burden of proof issue, did you? We did. Really? Where did you argue that the PTAB applied the wrong burden of proof? It's in our... Yeah, but where? Don't tell me I can find it. If I look through the whole brief, that's... Oh, shit. It's in this box. Your Honor, the burden issue is talked about on pages 42 and 43 of our brief, and the way we characterized the burden was that in denying the motion to remand, the board provided no specific findings to support the rationale. Yeah, but there's no argument that they put the burden of proof in the wrong place, is there? You're right about that. I mean, our characterization of the burden requirement was a bit different. Okay, well, if that's the case, and there was no 28J letter coming in... I mean, ACWA has been out there for a very long time and remains out there today. How is it fair to say that you've preserved that argument for purposes of this appeal? Well, I suppose our argument on the burden issue is different than that one. I don't think we're saying that there wasn't a proper burden shifting. It's just that when the board had their burden of responding... We filed a motion to amend. We have the burden of persuading the board that our claims are patentable. And in response to that, the board has some burden to provide some specific findings that we're then able to at least evaluate and then decide what our next step might be. What are the findings that they didn't make? As I understand it, your argument as to the patentability of the amended claims is that they showed dividing the strip into two pieces and applying the smaller strip first, right? Right. That feature is not in the prior art. We call it the asymmetric payload cover. Though the prior art in Thomas and Mason showed dividing the cover into separate pieces, right? Sure, but I don't know that that by itself is sufficient to render the small strip... The asymmetric aspect of this is being obvious. At best, they talk about... If you look at the palm picture, the diagram... This diagram is a palm. They show that in palm, they're trying to attach an edge piece of the peel-away cover under the cell phone. But there's no suggestion at all that a solution to that would be an asymmetric peel-away backing. And so there's no discussion by the board about combining those references, let alone adding that additional feature. I mean, there is this thing in Thomas on page 349 in the left-hand column. Removable backing sheet is not limited to one single sheet. Rather, it's fully contemplated that removal backing may be comprised of multiple sheets to facilitate easier removal from transparent overlay sheet, et cetera, et cetera. But again, I don't know that that... You mean your invention is a small... Your invention is not multiple sheets, but having a small sheet and a large sheet? Essentially, yes. And having a small sheet allows you to have a smaller adhesive area to attach to the cover of the phone. And then once you attach it, you can remove the balance of the cover from the film. I would like to go back to the priority issue, because I think the board made some inconsistent findings that I think are important for you to consider. So on the one hand, the board found that there was insufficient disclosure, and Mason wanted to provide priority for those claims. But when they moved in the section of their opinion to the obviousness analysis, they made contrary findings. They spent a lot of time, once concluding that Mason 1 is now prior art, they spent a lot of time talking about how Mason 1 and Thomas combined render these claims 134 and I think 2021 unpatentable. But in that section, they clearly say... I'm sorry, 288 is their record. It's about the middle of the page. It's the first full paragraph there. As discussed above, Mason 1 discloses a package that includes a screen protector, which has an adhesive layer. Those are the first two elements of claim 1. A peel-away cover film, that's element 3. An application card, that's element 4. So in that finding, they specifically found that that specification discloses those elements. They go on, and even though this is buried in a 103 analysis, the last sentence of that very last paragraph is discussed above. Claims 134 of the 596 patent are not entitled to the priority data that you find in Mason 1, etc., and is thus available as prior art under 102. So they're on the one hand saying that Mason 1 acts as a 102 bar against the claims in the 596, but on the other hand, that there's not sufficient disclosure to support those claims. I don't understand. It says, because you've just taken bits and pieces of various sentences, and I find it confusing. As discussed above, 134 of the 596 are not entitled to the priority date Mason 1. Mason 1 issued on June 2008, more than a year prior to the August 2010 filing date. Is that a typo? What? And is thus available as prior art under 102B. Oh, so Mason 1 is available as prior art. Prior art, right. They're just saying it's available as prior art. They're not saying it fully anticipates, because the whole section is discussing a combination of Mason and Thomas. No, I understand. It's buried in there. But why wouldn't Mason 1? I mean, that's going to be the best, that's better prior art than Palm 1, and they used Palm 1 to anticipate Claim 1. Why wouldn't Mason 1 be even better art? It's the same invention. What do you conclude from that? That they had a better argument against you than they articulated? No, it's just inconsistent. I don't think it's possible to say a written description acts, in a chain of patent filings, can act as 102 art against a subsequent set of claims, but not act as sufficient for 112. I don't know how it's conceivable that it could be 102 art, but not still meet the written description requirement for 112. Well, because you can use the discussion of prior art in the specification as an obvious misconsideration, even though your invention didn't actually disclose that limitation. Obviousness, yes. This is not. This is anticipation. That their conclusion was an obviousness determination. They're not being asked if they say 102. But they didn't say it was anticipated. We're being asked to review an obviousness determination based upon Mason and Thomas. Even if they somehow also incorrectly found an anticipation, that's at best harmless errors. If there's sufficient evidence to show that Mason 1 and Thomas make this obvious, and they're right on the priority date, what does it matter if they made an incorrect anticipation finding? I'm just saying that it matters because the rationale that they've included in that analysis, I think, is completely inconsistent. It's at all not clear to me that they're saying Mason 1 fully anticipates these claims. I don't think that's what that sentence says. I think what it says is you can use Mason 1 as prior art because it's more than a year before the priority date. And in combination with Thomas, which discloses an element not contained in Mason 1, it's obvious. I'm just reading the language from the order, and that's what the order says. It doesn't use the word anticipation. 102. When I read 102, I take it to mean anticipation. So is there confusion? Are you saying that, as Judge Dyke pointed out, so your argument is, and they also found an alternative ground, that Mason 1 was anticipatory? Well, even if that's true, even if you win on that, you've still got to dislodge the other conclusions with respect to the obviousness inquiry, right? I don't see where it gets you. Well, this is where it gets me. If we get the benefit of the analysis here under the obviousness section of the order, where they conclude that Mason 1 discloses and describes all of these features, if I get the benefit of that finding and apply it to the priority finding, then Mason 1 is no longer prior art. I'm just saying the analysis in the obviousness section of the order, when a... It's no longer prior art because why? Because it's a sufficient written description? Because they've acknowledged that Mason 1 fully and completely describes every element in the claim, and that's all we need under Section 112. No, it's not. The written description has to show that you invented all these features, not that those features were present in the prior art. And that's the key distinction on their finding. True. So where's the starting point for this analysis? We already talked about this. You were not willing to point me to a single sentence that described your invention and Mason 1 or Mason 2 as including the component they found lacking. With all due respect, I think the analysis you're doing is what the board did. And evaluating the scope of the claims... And what's wrong with that? If the written description of your invention doesn't include that element, if it's only included in the prior art, then you don't have sufficient written description for that element. Even if that very same specification suggests that element is in the prior art. You have to say it's included in your invention, don't you? But the standard is different. What the board is doing is they're looking at the claim, and then they go for support trying to find a complete embodiment that incorporates every element of that claim. We're not required to show every embodiment of our invention, just best embodiment. We're entitled to use elements from one embodiment, from other embodiments, or from description not even included in an embodiment. We're talking about a peel-away cover on a protective film. It's so well-known, it's so common in the art, it doesn't warrant any more description than in the background. Until you get to the 596 patent, where now the nature of the asymmetric peel-away is more important for the point of novelty of the new matter. That's the asymmetric backing. So it's not just what's part of the background of the invention, it's brought more front and center and talked about in terms of this one embodiment. But the claims are not limited to just the embodiments that we find. We've exceeded your rebuttal. We'll restore two minutes of rebuttal time. Let's hear from the other side. May it please the court. I wanted to address first the argument that there is an inconsistency. This is the first time that that argument has been raised. In fact, it's in the Statement of Issues, the issue that Zagg has in the Statement of Issues, it says whether the issue is whether or not claims 1, 3, and 4 are obvious in view of Mason and Thomas. Does that say anything about anticipation? Yeah, but he's just making an argument to support his ultimate conclusion. I mean, that's fair game. He wouldn't have to state that as an issue. It's an argument to show that the board... Obviously, we might not buy that argument, but that's an argument that I think is fair game, right? Well, you certainly should not buy that argument. I think that if I recall the cases, that for obviousness purposes, you look to 102 to determine what's prior art, and that would seem to be all that the board is saying here, is that we're determining what's prior art by looking at 102. It's not saying it's anticipation. Right. There is no inconsistency. There was no statement by the board anywhere that Mason anticipated claim 1, 3, or 4. That's just a fact. In fact, as stated in the Statement of Issue, what the board... Well, Zank completely disregarded the fact that the board found that claim 1 was anticipated by the poem reference. And we argued in our brief that they had waived that argument. In the reply brief, they did not argue that... They're not arguing that now. They're not arguing it now. So claim 1 is out. But nevertheless, it is a mischaracterization to suggest that Mason was cited as anticipating claims 1, 3, and 4, as you have suggested. Indeed, the board found that claims 1, 3, and 4 were obvious in terms of Mason and Thomas. Why? Because the PLOA form everything in claim 1. I thought they weren't even... I thought in response to Judge Hughes' questions, they agreed that if Mason is prior art, they lose on claims 1, 3, and 4, and that the only issue that remains then is the amended claim. Right. Right. Another point that I wanted to address that was made was the characterization of a small sheet and a large sheet, this asymmetric PLOA film. In fact, if you look at the claims, it just says one portion is smaller than the other. And so that is supposed to be patentably distinct from these in which there's perforation down the middle. So it could be anything up to one microliter, meter, up to being half. It's anything less than half if you look at the claims. And that is the alleged patentable subject matter. In the opening argument, Zag said that at best they talk about Paul, but in fact, as you pointed out, the board's decision was also based on Thomas, and it was also based on Mays with respect to the substitute claims 19 and 22 through 32. What about the burden issue? Is there... You know, assuming that... Well, I don't want to say anything about ACWA, but assuming that the burden shouldn't be on them, it should be on you or the board, is there anything in the board's decision or put forth by you that would let us find, even if there was an error, it was harmless because the board and you put forth sufficient evidence to show that they were untouchable? Absolutely. I think that the board made a very strong showing, and we did as well. That those claims, that those proposed substitute claims are obvious in view of... I'm sorry, you have to let me ask my questions. Can you point me to that? Because I read the board's opinion, and I do have some difficulty because every time I see them talking about it, they talk in terms of Zag failing to meet its burden rather than saying, this is our finding or you have put forth sufficient evidence. Okay. Let me see if I can point you to that argument. If you look at appendix pages 293 to 300, I think you'll see a pretty good statement of the argument as to why these substitute claims are obvious over Thomas, Paul, and Mays. You're absolutely correct that the board, because of the case law that exists, the board would say that the conclusion is that Zag failed to meet its burden. But if you look at those seven pages, you see an analysis of how those claims really render obvious. I mean, you should be able to pinpoint us more precisely than the entire discussion, but I assume you're talking about maybe page 279, where it says that Petitioner argues a patent owner has not demonstrated that the added features are patentable and that we are persuaded by Petitioner, and things like that. Well, let me say this. I'll briefly summarize the argument. I mean, you understand my issue, is that I'm not faulting the board for using its burden-approved standard because it's what's the applicable law. But that issue is before us in ACWA, and if it comes out a different way, then if they rely solely on a failure of the patent owner's burden-approved, then I'm not sure how we can affirm it. But if there's evidence to suggest that they satisfied their obligation, or you somehow satisfied an obligation, then perhaps it's harmless error. Whatever would happen in ACWA. Yes. I'm not sure that the board is relying on burden-approved as opposed to the burden of production because on page 293, they say, well, I'm not required to prove that the claims are patentable over every item of prior art. No person of ordinary skill, a patent owner, is required to explain why the claims are patentable over the prior art of record, and it seems to me that they never really say that we're saying that you failed to meet the burden of persuasion. You just failed to explain the burden of production, why the claims are unpatentable. Well, they did say that, but I think they have also, I have to admit, that they have points that fail to show that the claims were patentable. But I think that it is harmless error because I think that if you look at the discussion, basically the asymmetric PLOA, there are really two purported innovations involved in this case. One is the PLOA cover film, and I want to emphasize that Zag has really tried very hard to confuse the issue by talking about wet embodiments and dry embodiments. The board focus said specifically the crux of the issue in this case is PLOA film cover, and in fact, the 596 patent specifically states that the PLOA film cover is contemplated both for the wet embodiment and the dry embodiment. And if you look at the very pages cited by Zag for saying that the board improperly stated that the 596 patent was limited to the dry embodiment, you see right there on appendix 278, 279, the board is saying here's the wet embodiment in 596 and here's the dry embodiment. So really the crux of this is the PLOA cover. And then in the substitute claims, what happened there was that in the claim that was canceled, Zag had just said that there was a perforated line and there were two portions. That claim was canceled, and the substitute claims, as Zag says, the heart of all the substitute claims, except 20 and 21 I should add, which 20 and 21 are really kind of in the same category of one, three, and four, because 20 and 21 just involved the PLOA film cover and then added material from Mason. But the 19 and 22 through 32 are this asymmetrical film cover, which as I said is simply instead of being two portions, it provides that one portion is smaller than the other. So getting this substantively, what the board said is that, okay, so you have one portion smaller than the other. Mays discloses a PLOA form in two halves. Thomas discloses a removable backing sheet, and I believe you read the quotation from Thomas, where you peel away the smaller portion and it even contemplates multiple removable backing sheets. And then Thomas, if you look at the pictures in Thomas, it shows, as you would, I'm sorry, in Thomas I should also note that they compare it just to a PLOA name tag. So it's very, very common. And in Palm, if you look at the pictures in Palm, the third reference, that shows a small portion of the PLOA cover being pulled off so that a small portion can be applied and then peeling away the rest. So I think that there's a very strong argument that these proposed substitute claims are obvious. Furthermore, the board cited the motivation for combining the references. And if you look at appendix 299 and 297 and those portions of the decision, the board talked about the advantages of being able for easier alignment of pulling away one portion before you pull away the other portion. So I do think that regardless of what happens with in re aqua, it could be a harmless error. And with respect to the background, one of the mischaracterizations in Zach's brief is that it states that our position is that anything in the background section, that nothing in the background section could support written description requirement. But what we have said, and we cited Aniscape, the Nintendo of America for this proposition, is basically it's a description of the prior art, it's not a description of the invention. It's very clear from the context if you look at those sections that they are very specific discussions of prior art, and as admitted, there is nothing in the rest of the specification that in any way suggests that that was incorporated into the invention. Zach's argument that the claims are patentable is basically largely based on 1.3 and 4. Again, Palm anticipates 1. Thomas shows everything in 1 except the pre-cut films. Well, it does show pre-cut films. It's actually pre-cut films are disclosed in the background of Thomas, but it does not show the liquid solution. The liquid solution is in claims 3 and 4, but of course that's in Mason. Mason shows everything in 1, 3, and 4 except the peel-away cover, which is supplied by Thomas with respect to the obviousness. With respect to claim 20, which corresponds to cancel claim 5, as stated by the board, while Zach claimed that the substitute claim was patentable because the prior art did not show the additional subject matter, the added subject matter is all found in Mason 1, which is prior art. Zach, as I'm sure you're aware, Zach has not claimed any priority with respect to the substitute claims 19 and 22. Thank you very much. I want to read the standard for the written description of employment that the board cited. I think it's the correct standard. The disclosure need only reasonably convey to persons skilled in the art that the inventor had possession of the subject matter in question, even if every nuance of the claims is not explicitly described in the specification. Our specification is better than that. Anyone that reads those claims is going to understand exactly what they mean. I believe it would be inconceivable if those claims, claim 1, were a part of the original Mason 1, that they would have been denied on 112. To me, it's an impossibility because of the support in the background section. It's the same test. You should get the same benefit. Just because it's a continuation of a later application doesn't matter. And you're not suggesting the board applied the wrong test? The articulated test is correct. Its application is wrong because, as I said before, it's looking for embodiments that include all the elements of the claim. That's not the requirement. Any person skilled in the art reading our claims, in light of that specification, including the background, is going to know exactly what those claims are. The claims define the invention, not the embodiments. I can understand the temptation to say this is background, this is not, but the lines are not that clear. It's a continuum of information. Most claims are innovation, inventions are combinations of existing things. Existing things is background. And when you're drafting an application with that background in mind, you'll pull from it, and in your detailed description, you'll draft your application focusing on the points of novelty and things like that with your claim set. But as Mason 1 is filed, Mason 2, and the 596, the points of novelty change. So now what was just clearly well-known in the art, in the background, with the peel-away, and again, it's a peel-away for the protective film. So the film and the peel-away cover are inextricably connected. And there's no question that the film is talked about in all of these, but when you get to the 596, we're not just relying on the standard protective film peel-away cover that's so common in the background. We've modified it. It's asymmetric now. It's with a dry application. It's become more prominent in what has now become a different point of novelty. But it's fully disclosed. Any one skilled in the art reading that claim in light of that specification is going to know what it means. The final point, we've exceeded your time. The final point is, background sections are used all the time for enablement, construing claims. I think it would be a mistake to say that background's not available for Section 112. Thank you. We thank both sides and the case is submitted.